<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JASON MELLY,<br><br>     Plaintiff,<br><br>     v.<br><br>TSAROUHIS LAW GROUP, LLC *et al.*,<br><br>     Defendants. | No. 24cv7296 (EP) (JRA)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

Plaintiff Jason Melly[1] brings this action against Defendants Tsarouhis Law Group, LLC ("TLG") and Dyck-O'Neal, Inc. ("Dyck-O'Neal") (collectively "Defendants") for violating the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") because Defendants filed an untimely debt collection action against Plaintiff, and at the time Defendants filed the state court collection action, Dyck-O'Neal was not properly licensed as a consumer lender with the New Jersey Department of Banking and Insurance, thereby violating the New Jersey Consumer Finance Licensing Act, N.J. Stat. Ann. § 17:11C-1 *et seq.* (the "NJCFLA"). D.E. 3 ("Amended Complaint" or "Am. Compl.").

After fact discovery was completed, Plaintiff and Defendants each moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See* D.E. 30-1 ("Defendants' Motion"

---

[1] While Plaintiff's Amended Complaint identifies Plaintiff as acting on behalf of all others similarly situated, he determined that there was not a suitable class size, and therefore Plaintiff is only pursuing his claim individually. P. Mot. at 1 n.1. Therefore, the Court analyzes Plaintiff's claims only as they pertain to him.

or "Defs. Mot.");[2] D.E. 31-1 ("Plaintiff's Motion" or "P. Mot.").[3]  Defendants oppose Plaintiff's

Motion, D.E. 35 ("Defs. Opp'n"), and Plaintiff replies, D.E. 38 ("P. Reply").  Plaintiff opposes

Defendants' Motion, D.E. 36 ("P. Opp'n"), and Defendants reply, D.E. 37 ("Defs. Reply").

The Court decides the motions without oral argument.  *See* Fed. R. Civ. P. 78; L. Civ. R.

78.1(b).  For the reasons set forth below, the Court will:  (1) **GRANT in part** and **DENY in part**

Defendants' Motion and (2) **GRANT in part** and **DENY in part** Plaintiff's Motion.

## I.    BACKGROUND[4]

Plaintiff owned a home in Jersey City, New Jersey, and when he purchased the home, he

secured a mortgage on the property.  P. SUMF ¶ 2.  At the time of purchase, Plaintiff also

purchased mortgage insurance through Genworth Mortgage Insurance Corporation ("Genworth").

*Id.* at ¶ 3.  In 2010, Plaintiff failed to pay his mortgage payments and defaulted on his loan.  *Id.* at

¶ 4.  To avoid foreclosure, Plaintiff engaged a third party to sell his property in a short sale, which

resulted in a deficiency balance remaining on Plaintiff's mortgage.  *Id.* at ¶¶ 5–6; Defs. SUMF

¶¶ 1–2.  After the sale, Plaintiff executed a promissory note with Genworth (the "Promissory

Note").  P. SUMF ¶ 7; Defs. SUMF ¶ 3.

---

[2] Defendants filed their notice of motion at D.E. 30.

[3] Plaintiff filed his notice of motion at D.E. 31.

[4] The facts in this section are drawn from:  (1) Defendants' Statement of Undisputed Material Facts, D.E. 30-2 ("Defendants' SUMF" or "Defs. SUMF"); (2) Plaintiff's Statement of Undisputed Material Facts, D.E. 31-4 ("Plaintiff's SUMF" or "P. SUMF"); (3) Defendants' Response to Plaintiff's SUMF, D.E. 35-1 ("Defs. Response SUMF"); and (4) Plaintiff's Response to Defendants' SUMF, D.E. 36-2 ("Plaintiff's Response SUMF").

The facts in this Section, and throughout this Memorandum Order, are undisputed unless otherwise indicated.

2

The Promissory Note obligated Plaintiff to repay a principal amount of $16,325.00 over 120 monthly payments in the amount of $136.04.[5]  P. SUMF ¶ 8.  Under the Promissory Note, Plaintiff was supposed to start making payments on November 1, 2010.  *Id.* at ¶ 9.  The Promissory Note provided that the "Note shall be in Default if any payment shall be received more than ten (10) days after the due date."  Declaration of Sean M. O'Brien, Ex. C ¶ 5 (the "Promissory Note").  The Promissory Note also included a signature line for Plaintiff, which Plaintiff signed, and printed next to Plaintiff's signature line was the pre-written notation "(SEAL)."

I ACKNOWLEDGE RECEIPT OF A COPY OF THIS NOTE CORRECTLY COMPLETED AND AGREE TO ITS TERMS.

Maker's Name:    JASON MELLY

Signature:    _____ (SEAL) Date: _6/10/10_

Maker's Name: (if more than one)

Signature:    _____ (SEAL) Date: _____

EFT-PN-01/17/2001

Promissory Note at 2.

Plaintiff did not make any payment on the Promissory Note until he made a $50 payment in November 2013.  P. SUMF ¶ 9.  In March through September 2014, Plaintiff made four separate $100 payments to Genworth, which was still the debtor.  *Id.* at ¶ 10.  Plaintiff made no further payments on the loan after September 11, 2014.  *Id.* at ¶ 11; Defs. SUMF ¶ 7.

At some point, Genworth sold the Promissory Note to Defendant Dyck-O'Neal for collection.[6]  Defs. SUMF ¶ 5; *see* P. SUMF ¶ 12.  On June 29, 2023, Dyck-O'Neal, through its

---

[5] Except for the last payment, which was to be in the amount of $136.24.

[6] Though the date does not appear to be disputed, the parties do not clearly indicate when Genworth sold the Promissory Note to Dyck-O'Neal.  *See* P. SUMF; Defs. SUMF.

counsel, TLG, commenced a collection action in the Superior Court of New Jersey, Hudson County, Law Division, HUD-DC-005899-23 (the "Collection Action") to collect the remainder of the unpaid balance on the Promissory Note.  P. SUMF ¶ 13; Defs. SUMF ¶ 9.  The Collection Action brings two counts: breach of contract and unjust enrichment.  D.E. 31-2, Declaration of Mark Hersh ("Hersh Decl."), Ex. A (the "Collection Action").

After defending the Collection Action, Plaintiff filed this action against Dyck-O'Neal and its counsel TLG, alleging various violations of the FDCPA, including, for example, "collecting or attempting to collect an amount that it was not permitted by law."  Am. Compl. ¶ 65(H).  Plaintiff brings two counts against Defendants for violations of the FDCPA:  in Count I, Plaintiff argues that when Defendants filed the Collection Action "the applicable six-year statute of limitations had already lapsed" and therefore "Defendants' filing of a lawsuit on a time-barred debt constitutes a violation of the FDCPA."  P. Mot. at 1; Am. Compl. ¶ 13.  In Count II, Plaintiff argues that Defendants violated the FDCPA because at the time the Collection Action was brought, Dyck-O'Neal was not properly licensed under the NJCFLA.  Am. Compl. ¶ 43; P. Mot. at 15–20.

## II.    LEGAL STANDARD

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party.  *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  *Id.*  (citing *Anderson*, 477 U.S. at 248).

4

The movant bears the initial responsibility to establish the basis for the motion for summary judgment and to identify the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the nonmoving party bears the burden of proof on an issue, the moving party's initial burden can be met simply by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

After the moving party has met its initial burden, the nonmoving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Under Rule 56, a court must view the evidence presented in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment," *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002), as are unsworn statements in memoranda and unsupported statements in pleadings, *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). Indeed, "[i]f the non-moving party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Bixler v. Central Penn. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1302 (3d Cir. 1993) (citation modified). "The substantive law governing the dispute

will determine which facts are material, and only disputes over those facts 'that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Marcangelo v. Boardwalk Regency Corp.*, 847 F. Supp. 1222, 1226 (D.N.J. 1994) (quoting *Anderson*, 477 U.S. 248).

## III.    DISCUSSION

Plaintiff seeks damages for Defendants' violations of the Fair Debt Collection Practices Act. *See* Am. Compl. Specifically, Plaintiff claims that Defendants violated the FDCPA by (1) filing a time-barred collection lawsuit against Plaintiff; and (2) attempting to collect the debt when Dyck-O'Neal did not obtain a license as required by the NJCFLA. *Id.*

The FDCPA is a remedial statute designed to eliminate debt collectors from engaging in abusive and deceptive debt collection practices. 15 U.S.C. § 1692e; *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) (explaining the legislative history and purpose of the FDCPA).

> To prevail on an FDCPA claim, a plaintiff must prove that (1) [he] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a "debt" as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt.

*Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). The parties do not dispute that Plaintiff is a consumer, that Defendants are debt collectors, or that the Collection Action involved an attempt to collect a "debt" under the FDCPA. *See generally* P. SUMF; Defs. SUMF. The parties only dispute whether Defendants violated a provision of the FDCPA in attempting to collect the debt. Specifically, the parties dispute Plaintiff's two counts under the FDCPA, asserting violations against Defendants for: (1) filing a time-barred collection action; and (2) Dyck-O'Neal's failure to obtain proper licensing as a consumer lender under the NJCFLA.

### A.    Under New Jersey Law, Defendants' Collection Action was Time-Barred, Thus Violating the FDCPA (Count I)

The parties first dispute whether Defendants' Collection Action was timely brought in compliance with the FDCPA. *See* P. Mot.; Defs. Mot. To answer that question, the Court must make several preliminary determinations including: (1) whether North Carolina or New Jersey law governs the Promissory Note and (2) whether the Promissory Note was signed under seal.

The Court analyzes these arguments in turn, and concludes that: (1) there is a conflict between New Jersey and North Carolina law; (2) New Jersey law applies; (3) under New Jersey law, the Promissory Note was not signed under seal; and (4) Defendants' Collection Action was not filed within New Jersey's six-year statute of limitations. As there is no material dispute that filing a time-barred collection action is a violation of the FDCPA, the Court **GRANTS** Plaintiff's Motion on Count I of the Amended Complaint and **DENIES** Defendants' Motion on the same claim as a result.

### 1.    *Choice-of-law analysis*

The Court first reconciles the parties' dispute regarding whether North Carolina or New Jersey law governs the Promissory Note. The Promissory Note contains a choice-of-law provision providing that "[t]his Note will be governed by the laws of North Carolina." Promissory Note ¶ 10. But Plaintiff responds that New Jersey law should apply instead. P. Opp'n at 2–4; P. Reply at 1–4. This dispute is particularly important because while a document signed under seal in either state is subject to a longer statute of limitations, New Jersey applies a higher standard for signing a document under seal than North Carolina, Defs. Mot. 3–4; P. Mot. at 9–12.

"When a federal court exercises federal question jurisdiction, as is the case here, the court must apply the choice-of-law rules of the forum state." *Riffin v. Consol. Rail Corp.*, 363 F. Supp. 3d 569, 575 (E.D. Pa.), *aff'd*, 783 F. App'x 246 (3d Cir. 2019). Therefore, the Court will apply New Jersey's choice-of-law rules. New Jersey's choice-of-law rules "require the Court to apply

New Jersey substantive law, unless there is a conflict between the law of New Jersey and another interested state." *Saroza v. Client Servs., Inc.*, No. 17-3429, 2019 WL 5677968, at *2 n.2 (D.N.J. Aug. 22, 2019) (quoting *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008)). Therefore, the Court will first determine if a conflict exists and if so, the Court will proceed to consider whether the choice-of-law provision is enforceable.

a.    North Carolina and New Jersey law conflict

The parties do not dispute that a conflict exists between the New Jersey statute of limitations and the North Carolina statute of limitations. P. Opp'n at 2; *see* Defs. Opp'n. New Jersey has a six-year statute of limitations for breach of contract cases generally, which extends to sixteen years if the contract is signed under seal. N.J. Stat. Ann. §§ 2A:14-1; 2A:14-4. In North Carolina, the statute of limitations for breach of contract cases generally is three years, which extends to ten years if the contract is signed under seal. N.C.G.S. §§ 1-47(2), 1-52(1).

Notably, North Carolina and New Jersey have different standards for what it means for an instrument to be signed under seal, resulting in different outcomes on the issue of whether the Promissory Note was signed under seal. "[W]hen the application of one or another state's law may alter the outcome of the case," as is true here, "a conflict of law arises." *In re Accutane Litig.*, 235 N.J. 229, 254 (2018); *see also McCarrell v. Hoffmann-La Roche, Inc.*, 227 N.J. 569, 584 (2017) ("when a complaint is timely filed within one state's statute of limitations but is filed outside another state's then a true conflict is present."). Because the Court determines that the applicable state law will determine whether the Collection Action was time-barred, the Court finds a conflict between the laws of North Carolina and New Jersey and will conduct a choice-of-law analysis.

b.    Defendants fail to show a reasonable basis for applying the Promissory Note's choice-of-law provision

8

Generally, the operative framework for resolving a choice-of-law question involving statutes of limitations is the Restatement (Second) of Conflict of Laws § 142. The New Jersey Supreme Court has explained that in analyzing a choice-of-law dispute, "[u]nder Section 142(2)(a), the statute of limitations of the forum state generally applies whenever that state has a substantial interest in the maintenance of the claim. In that circumstance, the inquiry ends for statute-of-limitations purposes, unless exceptional circumstances would render that result unreasonable." *McCarrell*, 227 N.J. at 593.[7]

The framework differs, however, when the parties' contract includes a choice-of-law provision. Here, the Promissory Note contains a choice-of-law provision providing that "[t]his Note will be governed by the laws of North Carolina." Promissory Note ¶ 10. "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 130 N.J. 324, 341 (N.J. 1992). But "[p]arties' freedom to choose the law applicable to their agreements is not without boundaries in New Jersey law."

---

[7] Defendants argue that *McCarrell*'s holding is limited to tort actions, specifically that "[c]ontract claims are a different matter," and "New Jersey courts have recognized that 'parties may expressly provide that the validity and interpretation of the mortgage and note are governed by the substantive laws of a state other than New Jersey.'" Defs. Reply at 2 (quoting *Citibank, N.A. v. Errico*, 251 N.J. Super. 236, 243 (Super. Ct. App. Div. 1991)).

Defendants' arguments are not persuasive. First, Defendants cite cases prior to the New Jersey Supreme Court's holding in *McCarrell*. The holding in *McCarrell* is clear that Section 142 is "*now*" the standard to be used specifically for deciding statute of limitations conflicts. *McCarrell*, 227 N.J. at 574 (emphasis added). Therefore, the *McCarrell* decision changed the standard that New Jersey courts use in resolving choice-of-law disputes generally. Second, Defendants do not cite any authority to support the position that *McCarrell*'s holding is limited to tort actions. In fact, "[w]hile the court in *McCarrell* applied § 142 to tort actions, the [New Jersey] Appellate Division has expanded the application of § 142 to contractual disputes as well." *Yerkes v. Weiss*, No. 17-2493, 2018 WL 1558146, at *5 (D.N.J. Mar. 29, 2018) (citing *Berkley Risk Solutions, LLC v. Industrial Re–International, Inc.*, No. L-0163-15, 2017 WL 4159170, at *7–*8 (N.J. Super. Ct., App. Div., Sept. 20, 2017)).

9

*Collins v. Mary Kay, Inc.*, 874 F.3d 176, 184 (3d Cir. 2017). In analyzing a choice-of-law provision, New Jersey applies the Restatement (Second) of Conflict of Laws § 187, which provides that the court will not enforce the provision if:

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement § 187(2).

Courts enforce a choice-of-law provision where the record shows, for example, that one party is headquartered in the chosen state, *Instructional Sys.*, 130 N.J. at 342, or that the property that is the subject of the case is located within the chosen state, *Grandvue Manor, LLC v. Cornerstone Contracting Corp.*, 471 N.J. Super. 135, 143 (App. Div. 2022). Defendants have made no comparable showing here.

Plaintiff argues that none of the parties to the state court Collection Action had any relationship to North Carolina. P. Opp'n at 4. Based on the Amended Complaint, Defendant TLG's principal place of business is in Pennsylvania, and Defendant Dyck-O'Neal's principal place of business is in Texas. Am. Compl. ¶¶ 8–9. Plaintiff identifies several concrete New Jersey contacts: Plaintiff lived and worked in New Jersey, executed the Promissory Note in New Jersey, and executed it in connection with property located in New Jersey. P. Reply at 2–3. *See Eisenberger v. Bos. Serv. Co.*, No. A-2003-10T3, 2011 WL 3687398, at *2 (N.J. Super. Ct. App. Div. Aug. 24, 2011) (holding that New Jersey had substantial relationship to the parties and transaction because "the agreement was executed in New Jersey, [the plaintiff] lived in New Jersey at the time she executed it, and the [property] was returned to New Jersey."). P. Opp'n at 4. Plaintiff states that as a result, New Jersey law should apply here. *Id.*

10

Defendants do not meaningfully respond to Plaintiff's argument, provide a choice-of-law analysis, or identify anything in the record establishing a North Carolina relationship. *See* Defs. Reply. "When a party fails to respond to an argument in opposing a summary judgment motion . . . courts treat that failure as an abandonment of the claim." *Addison v. Signet Jewelers Ltd.*, No. 23-22956, 2025 WL 1766119, at *8 n.4 (D.N.J. June 26, 2025).

Defendants rely on the choice-of-law provision itself. In opposition to Plaintiff's Motion, Defendants state "there can be no material dispute that North Carolina law applies" because the Promissory Note says it is governed by North Carolina law. Defs. Opp'n at 4. Defendants' Reply incorrectly argues contract claims are not subject to *McCarrell*, and therefore § 142 should not apply. Defs. Reply at 2. But Defendants still do not conduct a choice-of-law analysis or refute Plaintiff's assertion that "neither party to the State Court Collection Action had any relationship to North Carolina." P. Opp'n at 4; *see* Defs. Reply at 2. Defendants' statement of material facts does not identify any North Carolina relationship. *See* Defs. SUMF. Put simply, Defendants' argument for enforcing the choice-of-law provision is the provision itself.

That is not enough. The question under § 187(2)(a) is not whether the Promissory Note contains a choice-of-law provision, it is whether the chosen state has a substantial relationship to the parties or the transaction, or some other reasonable basis for the choice. *Instructional Sys.*, 130 N.J. at 342; *Collins*, 874 F.3d at 184–85.

The only apparent North Carolina reference in the record—which Defendants do not point to, and which the Court identified by scouring the record—is that Genworth's address on the Promissory Note is in North Carolina. Promissory Note at 1. Defendants do not rely on that address, and the record does not show that Genworth was headquartered in North Carolina, that

11

the Note was negotiated or executed there, that payments were to be made there, that the Note was administered there, or that any party to the Collection Action had any North Carolina connection.

At most, the address suggests a possible contact for a non-party original lender. Nowhere in the Amended Complaint does Plaintiff allege that Genworth had any real involvement in the actions leading up to this lawsuit. *See generally* Am. Compl.; *see Dieffenbach v. Upgrade, Inc.*, No. 23-1427, 2025 WL 1239328, at *4 (M.D. Pa. Apr. 29, 2025) (refusing to enforce choice-of-law provision selecting New Jersey law because New Jersey-located non-party "had no real involvement in the actions giving rise to the instant lawsuit," and therefore "the state chosen by the parties . . . had no substantial relationship to the parties or the transaction and no other reasonable basis for the parties' choice exists").

This single mention of North Carolina in the record, that Defendants do not point to or explain, is not enough to meet Section 187(2)(a) or raise a dispute of material fact. Rule 56 requires that a "party asserting that there is a genuine dispute of material fact must support that assertion by 'citing to particular parts of . . . the record . . . .'" *Guidotti v. Legal Helpers Debt Resols., LLC*, 716 F.3d 764, 772 (3d Cir. 2013) (quoting Fed. R. Civ. P. 56(c)(1)(A)) (alteration in original). A court is not required to search the record to identify factual support for a party's position because "[j]udges are not like pigs, hunting for truffles buried in the record." *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (citation omitted).

The Court therefore declines to do Defendants' work for them. *See Shannon v. B.L. England Generating Station*, No. 10-04524, 2013 WL 6199173, at *7 (D.N.J. Nov. 27, 2013) (refusing to enforce the parties' choice-of-law provision because "none of the parties . . . produced any evidence of any relationship to" the chosen state); *Jentar Trucking, Inc. v. Tun*, No. A-3456-06T5, 2008 WL 2726728, at *6 (N.J. Super. Ct. App. Div. July 15, 2008) (applying § 187 to

determine that a forum selection clause selecting California was unenforceable because only a non-party resided in California and "defendants have produced no justification for why they would prefer for this case to be in California").

In sum, Defendants invoke the Promissory Note's choice-of-law provision, but do not defend its application after Plaintiff challenges it. Accordingly, on the parties' briefing and the record, Defendants have not presented a dispute that the state chosen in the choice-of-law provision, North Carolina, has a substantial relationship to the parties or the transaction, or any other reasonable basis. Therefore, the Court will not enforce the Promissory Note's choice-of-law provision pursuant to Restatement § 187(2)(a),[8] and will apply New Jersey law to determine the applicable statute of limitations.

2.    *Under New Jersey law, the applicable statute of limitations for Defendants' Collection Action was six years*

Now that the Court has determined New Jersey's statute of limitations laws will apply, the Court must next conclude what the applicable statute of limitations was for Defendants' Collection Action. The parties' dispute primarily depends on Defendants' argument, still applying North Carolina law, that the Promissory Note was signed under seal, thus extending the applicable statute of limitations. *See* Defs. Mot. at 3–5; Defs. Opp'n at 4; Defs. Reply at 3–4.

A statute of limitations begins to run on "the date on which the right to institute and maintain a suit first arose." *Cnty. of Morris v. Fauver*, 153 N.J. 80, 107 (1998) (internal quotation and citation omitted); *see also Caravaggio v. D'Agnostini*, 166 N.J. 237, 246 (N.J. 2001) (quoting *Baird v. Am. Med. Optics*, 155 N.J. 54, 72 (1998) ("The standard is basically an objective one—

---

[8] Because the Court reaches this conclusion under Section 187(2)(a), the Court does not go further to address Plaintiff's arguments that the provision is also unenforceable under Section 187(2)(b). P. Reply at 3.

13

whether plaintiff 'knew or should have known' of sufficient facts to start the statute of limitations running."). For installment contracts in particular, "a new statute of limitations begins to run against each installment as that installment falls due and a new cause of action arises from the date each payment is missed." *Cnty. of Morris*, 153 N.J. at 107.

The Collection Action includes two counts against Plaintiff: breach of contract and unjust enrichment. *See* Collection Action. New Jersey law mandates that for actions involving contracts:

> for recovery upon a contractual claim or liability, expressed or implied, *not under seal*, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents, and servants, shall be commenced within *six years* next after the cause of any such action shall have accrued.

N.J. Stat. Ann. § 2A:14-1(a) (emphasis added).[9, 10] However, if a contract is signed "under seal," the statute of limitations extends to sixteen years. N.J. Stat. Ann. § 2A:14-4. The Court first decides whether the Promissory Note was signed under seal and then applies the applicable statute of limitations to determine that Defendants' Collection Action was time-barred, and concludes that Defendants' filing of the Collection Action therefore violated the FDCPA.

---

[9] New Jersey also maintains a statute of limitations for contract actions governed by the UCC, which provides that "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date." N.J. Stat. Ann. 12A:3-118(a). Plaintiff argues, and Defendants do not dispute, that N.J. Stat. Ann. 12A:3-118(a) does not apply here because the Promissory Note does not involve a commercial transaction in goods. P. Mot. at 13.

[10] In New Jersey, a claim of unjust enrichment is also subject to a six-year statute of limitations. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 473 (D.N.J. 1999) ("The statute of limitations in New Jersey for claims sounding in restitution/unjust enrichment or quantum meruit is six years."). Therefore, when the Court determines that the Collection Action is time-barred, this conclusion refers to both counts of Defendants' Collection Action against Plaintiff.

14

a.    The Promissory Note was not signed under seal

The Promissory Note includes a signature line for Plaintiff, which Plaintiff signed, and printed next to the signature line is "(SEAL)." Promissory Note at 2. Plaintiff argues this pre-written notation on the Promissory Note did not create a sealed instrument. Defendants argue, applying North Carolina law, that regardless of Plaintiff's intent, this notation means the document was sealed. Defs. Opp'n at 4; Defs. Reply at 3–4. In turn, Defendant argues that the statute of limitations is extended. Defs. Opp'n at 4; Defs. Reply at 3–4. The Court, applying New Jersey law, determines that the Promissory Note was not signed under seal. Therefore, the applicable statute of limitations for Defendants' Collection Action was six years.

Whether or not a document is signed under seal is a question of law for the Court upon inspection of the document. *McClellan v. F.A.N. Co.*, 14 N.J. Misc. 760, 768 (N.J. Sup. Ct. 1936), *aff'd*, 118 N.J.L. 168 (App. Div. 1937). In order for a document to be signed "under seal," the contract must include (1) a device; and (2) a statement of sealing. *Zirbser v. Wells Fargo Bank, N.A.*, No. 19-1099, 2019 WL 3244621, at *2 (D.N.J. July 19, 2019); *see also Fidelity Union Trust Co. v. Fitzpatrick*, 134 N.J.L. 250, 251–52 (N.J. 1946). New Jersey courts have interpreted this to mean that "a sealed contract must bear a statement that the contract is sealed and the imprint or mark of a seal or the word 'sealed.'" *Zirbser*, 2019 WL 3244621, at *2 (quoting *Beneficial Fin. Co. v. Dixon*, 130 N.J. Super. 508, 511 (Dist. Ct. 1974)) (internal quotations omitted). Further, "[t]he mere recital of sealing, without a seal or other device by way of seal, does not constitute a seal." *Reitmeier v. Kalinoski*, 631 F. Supp. 565, 568 (D.N.J. 1986) (citing N.J.S. § 1:1–2.1).

The Promissory Note does not meet these requirements. The Promissory Note includes a statement of "(SEAL)" next to Plaintiff's signature. Promissory Note at 2. However, the Promissory Note does not include a statement of any kind that the document is to be signed under

15

seal. *See* Promissory Note. In *Fidelity Union Trust Co. v. Fitzpatrick*, the agreement included the notation "L.S." for *locus sigilli* next to the defendant's signature and the words "Signed, Sealed and Delivered," but there "were no words in the body of the agreement indicating that it was a sealed instrument . . . or any indication that the person signing the agreement regarded it as a sealed instrument." 134 N.J.L. at 251. Therefore, the Court held that the document was not signed under seal. *Id.* at 252.

Similarly here, the word "SEAL" appears next to Plaintiff's signature, but it is undisputed that there are no words in the Promissory Note that indicate that it is to be a sealed instrument. Simply, Defendants do not make any argument that there are any words within the Promissory Note that "the person signing [the Note] regarded it as a sealed instrument." *Id.* at 251; *see* Defs. Mot.; Defs. Opp'n; Defs. Reply. Therefore, there is no genuine dispute of material fact that under New Jersey law, the Promissory Note was not signed under seal.

As a result, the Court holds that the relevant statute of limitations for Defendants' Collection Action was six years.

b.      Defendants' Collection Action was time-barred and a violation of the FDCPA

Having determined that the applicable statute of limitations for Defendants' Collection Action was six years, the Court next determines whether the Collection Action was time-barred in violation of the FDCPA. The Court concludes that even calculating from the latest possible date, the Collection Action was time-barred.

As discussed above in Section I, Plaintiff's last payment on the Promissory Note was on September 11, 2014. Defs. SUMF ¶ 7; *see* P. SUMF at ¶ 12. As Plaintiff made a (partial) payment, on September 11, 2014, his next payment due date would have been on or about October 11, 2014. Accounting for the ten-day grace period, Plaintiff would have been in default on or about October

16

21, 2014. Even if the statute of limitations did not begin to run until this latest point, the Collection Action would be time-barred. Six years after the latest point of default would be on or about October 21, 2020. Defendants filed the relevant Collection Action on June 29, 2023, nearly three years after the statute of limitations expired. Collection Action; P. SUMF ¶ 13; Defs. SUMF ¶ 9. Therefore, Defendants' Collection Action was time-barred. [11]

> c.    Defendants violated the FDCPA by bringing a time-barred collection action

As the Court has determined that the Collection Action was time-barred, the Court must determine whether Defendants' bringing this suit violates the FDCPA. Plaintiff argues that filing a time-barred state collection action violates sections 1692e and 1692f of the FDCPA. P. Mot. at 14–15. While Defendants argue they did not file a time-barred collection action, they do not dispute that doing so violates the FDCPA. *See* Defs. Mot. at 5.

The FDCPA prohibits a debt collector from using "any false, deceptive or misleading representation in connection with the collection of any debt," 15 U.S.C. § 1692e, and from using "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f. Specifically, it is a violation of the FDCPA to commit a false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Filing a time-barred state collection action violates sections 1692e and 1692f of the FDCPA. *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32–33 (3d Cir. 2011) ("[T]he FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts.").

---

[11] As a result of this conclusion, the Court does not address the parties' dispute regarding whether Plaintiff's incremental payments tolled the statute of limitations. Defs. Opp'n at 5; P. Reply at 4–6.

Because it is undisputed that filing a time-barred action violates the FDCPA, and the Court has determined that the Collection Action was time-barred, *see supra* Section A(2)(b), the Court holds that Defendants violated sections 1692e and 1692f of the FDCPA by filing the Collection Action. Therefore, the Court **GRANTS** Plaintiff's Motion on Count I of the Amended Complaint, and Defendants' Motion on the same claim is **DENIED**.

**B.      Plaintiff's FDCPA Claim for Dyck-O'Neal's Failure to Obtain Licensing Under the NJCFLA Fails Because New Jersey Authority Does Not Allow a Private Right of Action Under the NJCFLA (Count II)**

Plaintiff's Amended Complaint also alleges that Defendants violated the FDCPA because Dyck-O'Neal was not properly licensed under the NJCFLA as a consumer lender when it filed the Collection Action. Am. Compl. ¶¶ 43, 53–59. Defendants respond that because the NJCFLA does not provide a private right of action, Plaintiff cannot bootstrap his NJCFLA claim to the FDCPA, and even if Plaintiff could, that Dyck-O'Neal is not subject to the NJCFLA's licensing requirements, Defs. Mot. at 5–8.[12] The Court concludes that under current New Jersey law, the NJCFLA does not create a private right of action because the statute's licensing requirements are committed to the Commissioner of Banking and Insurance. Therefore, the Court will **DENY** Plaintiff's Motion on Count II, that Defendants violated the FDCPA because Dyck-O'Neal was not properly licensed under the NJCFLA, and will **GRANT** Defendants' Motion on Count II.

Under the NJCFLA, "[n]o person shall engage in business as a consumer lender . . . without first obtaining a license or licenses under this act." N.J. Stat. Ann. § 17:11C-3(a). The NJCFLA defines a "consumer lender" as "a person licensed, or a person who should be licensed . . . to engage in the consumer loan business." *Id.* at § 17:11C-2. A "consumer loan business" is defined as "the business of making loans of money, credit, goods or things in action, which are to be

---

[12] Because the Court concludes that there is not a private right of action under the NJCFLA, the Court does not address whether Dyck-O'Neal is subject to the NJCFLA's licensing requirements.

18

primarily used for personal, family or household purposes in the amount or value of $50,000 or less . . ." *Id.* at § 17:11C-2.  More specifically, under the NJCFLA, "[a]ny person directly or indirectly engaging . . . in the business of buying, discounting or endorsing notes, or of furnishing, or procuring guarantee or security for compensation in amounts of $50,000 or less, shall be deemed to be engaging in the consumer loan business." *Id.* at § 17:11C-2.

Plaintiff cites to older authority in this District to argue that Dyck-O'Neal was subject to the NJCFLA's licensing requirements. P. Mot. at 16–19.  All of these cases support the proposition that an unlicensed debt buyer's collection activity may state a valid FDCPA claim under Section 1692e because the collector represents that it has the legal right to collect the debt when, under the NJCFLA, it does not.  P. Mot. at 16–19.  *See, e.g., Lopez v. Law Offices of Faloni & Assocs., LLC*, No. 16-01117, 2016 U.S. Dist. LEXIS 124730, at *13 (D.N.J. Sep. 14, 2016) (allowing FDCPA claim under § 1692e to proceed when Defendants, who purchased a consumer debt from a non-party, attempted to collect that debt without being licensed under the NJCFLA); *Veras v. LVNV Funding, LLC*, No. 13-1745, 2014 WL 1050512, at *8 (D.N.J. Mar. 17, 2014) ("Accordingly, MRS's attempt to collect Plaintiff's alleged debt on behalf of LVNV, who was not licensed as a consumer lender under the NJCFLA, constitutes prohibited conduct under the NJCFLA."); *Latteri v. Mayer*, No. 17-13707, 2018 U.S. Dist. LEXIS 85926, at *6 (D.N.J. May 22, 2018) (concluding that plaintiff's allegations "that Defendant violated the FDCPA when it attempted to collect a debt on behalf of an unlicensed consumer lender" were sufficient to state a claim for an FDCPA violation).

But Plaintiff fails to recognize that recent New Jersey appellate authority has moved away from this authority and held that the NJCFLA does not provide a private right of action.  *See, e.g., N.A.R., Inc. v. Ritter*, No. A-0322-23, 2024 WL 3098634, at *4 (N.J. Super. Ct. App. Div. June

19

24, 2024), *cert. denied*, 260 N.J. 300(2025) ("The NJCFLA does not provide a mechanism for action and enforcement to anyone other than the Commissioner of Banking and Insurance.") (citing New Jersey Stat. Ann. § 17:11C-18); *McQueen v. Razor Cap., LLC*, No. A-2647-23, 2025 WL 1304200, at *2 (N.J. Super. Ct. App. Div. May 6, 2025) ("the [NJ]CFLA does not provide a private right of action").

These cases, among others, point to New Jersey Stat. Ann. § 17:11C-18, which details the New Jersey "[C]ommissioner [of Banking and Insurance]'s authority" to maintain "oversight of licensees and enforcement of the activities regulated under the [NJCFLA]."  New Jersey appellate courts have held that "the Legislature has drafted an extensive statutory scheme that tasks the Commissioner with the sole responsibility of enforcing the requirements of the Act," therefore "it would be inappropriate to construe the Act as impliedly authorizing a private cause of action." *Veras*, 2014 WL 1050512, at *9 (quoting *Castro v. N.Y. Times Television*, 370 N.J. Super. 282, 294 (App. Div. 2004)); *see also Valentine v. Unifund CCR, LLC*, No. A-0835-23, 2025 WL 1304173, at *2, *4 (N.J. Super. Ct. App. Div. Mar. 6, 2025).

In fact, New Jersey courts have specifically held that claims like Plaintiff's—in which an FDCPA claim is based on an allegation that a party was not properly licensed under the NJCFLA— must fail.  *Valentine*, 2025 WL 1304173, at *2, *4 (affirming trial court's denial of plaintiff's FDCPA claim because it was predicated on the allegation that the defendants were not properly licensed under the NJCFLA, and "the NJCFLA [does] not contain a private right of action."); *Unifund CCR LLC v. Garabedian*, No. A-4148-23, 2025 WL 3085022, at *5 (N.J. Super. Ct. App. Div. Nov. 5, 2025) ("the lack of licensure under the NJCFLA cannot be a basis [for an FDCPA claim] because defendant is not entitled to bring a private action under this statute.").

Under this current case law,[13] the Court holds that Plaintiff's FDCPA claim predicated on a violation of the NJCFLA fails because recent New Jersey appellate authority holds that private parties may not enforce the NJCFLA in this manner.  Accordingly, Plaintiff may not use the FDCPA to create a private NJCFLA enforcement action.  As a result, the Court **GRANTS** Defendants' Motion on Count II of the Amended Complaint and **DENIES** Plaintiff's Motion on the same claim.

## IV.    CONCLUSION

For the reasons stated above,

**IT IS**, on this **29th** day of June, 2026,

**ORDERED** that Defendants' Motion for Summary Judgment, D.E. 30, is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Plaintiff's Motion for Summary Judgment, D.E. 31, is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Plaintiff's Motion is **GRANTED** as to Count I of the Amended Complaint; and it is further

**ORDERED** that Defendants' Motion is **DENIED** as to Count I of the Amended Complaint; and it is further

---

[13] The Court notes that the issue of whether the NJCFLA provides a private right of action is currently pending before the New Jersey Supreme Court in *Diana v. LVNV Funding, LLC*, 260 N.J. 313 (2025) (granting petition for certification, limited to whether the New Jersey Consumer Finance Licensing Act, N.J.S.A. 17:11C-1 to -49, provides a private right of action).  Therefore, at present, the New Jersey appellate authority holds that the NJCFLA does not create a private right of action and that enforcement of the statute's licensing requirements is committed to the Commissioner of Banking and Insurance.  Although the New Jersey Supreme Court's pending review in *Diana* may clarify or alter that rule, no party has requested a stay pending the New Jersey Supreme Court's decision in *Diana*, and this Court applies the current state of New Jersey law.

**ORDERED** that Defendants' Motion is **GRANTED** as to Count II of the Amended Complaint; and it is further

**ORDERED** that Plaintiff's Motion is **DENIED** as to Count II of the Amended Complaint; and it is finally

**ORDERED** that the Clerk of Court shall close this matter.

_____
Evelyn Padin, U.S.D.J.

22